CLAUDE E. VROOMAN v. ROLAND HILL, Appellant.—147 S. W. (2d) 602.

Division One, February 14, 1941.

342

*Alphonso Howe* and *Anderson, Gilbert, Wolfort, Allen & Bierman* for appellant.

*McDonald, Bartlett & Muldoon, Jesse McDonald, Daniel Bartlett* and *Thomas F. Muldoon* for respondent.

BRADLEY, C.—Action for services under an alleged oral contract. Verdict and judgment went for plaintiff for $10,000 and defendant appealed.

Plaintiff, respondent here, alleged that defendant owned an unimproved lot at the southeast corner of Euclid and Maryland avenues, St. Louis; that there were use restrictions and also restrictions as to size of building which might be erected on the lot; that defendant employed plaintiff to assist in getting restrictions removed and to advise and represent defendant in connection with a building to be erected on the lot; to engage an architect and supervise the preparation of plans and specifications for the building. It is alleged that plaintiff rendered all the services contemplated by the contract and that defendant agreed to pay him $10,000 therefor, but has failed and refused to do so. The answer was a general denial.

Defendant assigns error on the giving of plaintiff's only instruction and on the refusal of an instruction offered by defendant. Of plaintiff's instruction defendant says: ''The submission of the case to the jury on plaintiff's instruction purporting to cover the whole case, which simply submitted plaintiff's theory, with no instruction covering defendant's theory, was erroneous.'' So it appears that the real question here is the refusal of defendant's instruction.

Plaintiff's instruction directed a verdict of $10,000 for him if the jury found ''that on or about May 1, 1923, the plaintiff Vrooman was employed by the defendant Hill to act as general real estate agent for defendant in connection with a proposed building on defendant's lot described in the evidence; that it was agreed between plaintiff and defendant that as such agent plaintiff was to advise defendant with respect to the height and size of such building, the building line to be observed, the number and size and arrangement of the rooms, the character and size of the store spaces, the general design and style and appearance of the proposed building, and the character of the use for which the building was to be designed; that it was further agreed that under said employment plaintiff was to assist defendant in securing the consent of the owners of a majority of the frontage on the south side of Maryland avenue in the block between Euclid and Taylor avenues to a modification of the building and use restrictions so as to permit the erection and use for business of such building; and if you further find and believe that plaintiff under said employment did advise defendant with respect to the height and size of such building, the building line to be observed, the size and number and arrangement of the rooms, the character

and size of the store spaces, the general design and style and appearance of the proposed building, and of the character of the use for which the building was to be designed; that plaintiff also engaged an architect and supervised the work of the preparation of sketches, plans and specifications, and submitted them to defendant; that plaintiff also assisted defendant in preparing necessary forms of consent and in securing the consent of the owners of a majority of the frontage in said block to the modification of the restrictions described in evidence; and if you further find and believe that while plaintiff was so engaged under said employment defendant orally agreed to pay plaintiff the sum of ten thousand dollars ($10,000.00) for his services.''

The instructions were not numbered, but for convenience we shall refer to defendant's instructions as Nos. 1, 2, 3, and 4. Numbers 1 and 2 were given, and 3 and 4 refused. No complaint is made on the refusal of 3. Defendant's refused instruction 4 follows: ''The court instructs the jury that if you find and believe from the evidence that plaintiff and defendant entered into an oral agreement wherein plaintiff was to advise and assist defendant concerning the proposed building and concerning the removal of restrictions concerning the lot on which the building was proposed to be erected, and that plaintiff agreed to so advise and assist defendant for no charge, but as a matter of friendship, if you so find, then your verdict will be for defendant.''

Defendant's given instructions 1 and 2 were as follows: ''(1) The court instructs the jury that before you can find a verdict in favor of the plaintiff in this case you must find and believe from the evidence that the defendant agreed to pay plaintiff the sum of $10,000.00, and if you find and believe from the evidence that defendant did not agree to pay plaintiff the sum of $10,000.00, then your verdict must be in favor of defendant even though you find and believe from the evidence that plaintiff did work, rendered advice and rendered service to defendant, and even though you further find that such work, advice and service was of value to defendant.

''(2) The court instructs the jury that the burden of proof is on the plaintiff to prove to your reasonable satisfaction by the preponderance, or greater weight, of the credible evidence that defendant entered into a contract with plaintiff and agreed to pay plaintiff the sum of $10,000.00, and this burden of proof continues and abides with plaintiff throughout the entire trial; and unless you find and believe from the evidence in the case that plaintiff has proven to your reasonable satisfaction by a preponderance of the credible evidence that defendant entered into a contract with plaintiff and agreed to pay plaintiff the sum of $10,000.00, then your verdict must be in favor of defendant.''

346

Defendant is a physician and surgeon; had known plaintiff many years; they were old friends. In 1921, plaintiff was a patient (not defendant's) in St. Luke's hospital. Defendant had a patient (Clifton McMillan) in the hospital and on occasions, when calling to see McMillan, defendant stopped in to pay a friendly visit to plaintiff. McMillan was vice president of the Mercantile Commerce Bank & Trust Company, owned property in and resided in the restricted area of defendant's lot. Defendant testified that in a conversation with plaintiff at the hospital he told plaintiff that McMillan had said that he (McMillan) might help defendant as to getting the restrictions removed; that thereupon plaintiff was "interested at once" and said he "would be glad to help me, and help me put up a building there, and I knew he was a builder, and after seeing him a few times he—I asked him what a building like that would cost him down there, a two-story building. He said he could put one up for $75,000. I said, 'I don't want to do anything that is out of the way so far as Mr. McMillan is concerned.' He said, 'That will be perfectly all right; Mr. McMillan is one of my best friends,' and he said, 'I can just go around and see him and release the restrictions, and then help to build the building.' I said, 'Now, Claude, if you did that for me what would you charge?' He says, 'This is not a question of money, this is a question of old friendship; I wouldn't charge you a cent, and you will owe me nothing but your good will.' . . . Well, Mr. Vrooman got out (of the hospital) and I told him it would be all right to go ahead, and he went out and went to see Mr. McMillan, and that was the end of the restrictions for many years. McMillan was not co-operative and he couldn't get McMillan to do a thing, and the thing dragged along for nearly five years, and then one day, for some reason or other—I don't know what it was—I was called by Mr. Vrooman down to his office. . . . And when I went down to this office of Mr. Vrooman in 1925 he put me on a big chair down there, and he kind of walked over and said, 'Doctor, you are sitting in my shearer's chair; that is where I put them when I go to shear them.' That was kind of strange; I hadn't heard anything about any charge or any obligation, other than the original one that he mentioned, and I said, 'What is this probably going to cost me?', he says, 'if I finish this and build a building for you I will expect a fee of ten thousand dollars;' I says, 'What does the architect, Mr. Bradshaw, say that the building will cost?' He said, 'it would cost something about—over $150,000.00.' And when I came home my wife just turned red when I told her about it. . . . Q. Dr. Hill, at that time, or at any subsequent date, did you ever agree to pay, or had you ever before agreed to pay, Mr. Vrooman a ten thousand dollar fee in connection with this project? A. The mentioning of a fee—a fee was not mentioned from the initial time when I saw Vrooman in the hospital until I sat in the shearer's chair in his office.

Q. That was about the first of November (1925)? A. About the first of November. Q. All right. Did you agree to pay him a ten thousand dollar fee? A. I did not at any time; didn't agree to pay him anything. Q. Now, after you wrote him this letter of November 2, what happened after that, Dr. Hill? A. Some time in November he came out to see me one night, pretty well loaded up, too, and discussed the property over and over again, and when he left I told him—he wanted to go on and continue with the project. I told him that—just as he left I said, 'We will have to consider it and let you know if we want you any more.' The next thing I heard from Vrooman, he wrote me a letter. Mr. Vrooman did nothing after that that I know of. Q. The building permit, how did you happen to get it, the building permit? A. Oh, that was a little later than that (May, 1926). Q. Yes. A. Mr. Vrooman called me up; he said, 'The zoning ordinance is coming in; even if the restrictions were released, you might still be bound by the new zoning ordinance.' He said, 'I would like to get the permit for you'—the building permit; he said, 'If you will let me do that it will be without any obligation to you, and if you want to get somebody else to carry on the work you will be at liberty to do so.' "

On cross-examination, plaintiff was asked about some question (not here shown) that was asked him in a deposition, and was asked if he did not make this answer: "No, I don't remember mentioning the word 'friendship,' but I told him I would aid him in any way I possibly could as I had done previously." He answered: "Well, that might have been added inadvertently. That was not thought of at any time. If it is in the deposition, I said it, but it wasn't intended that way. . . . The agreement to pay me $10,000.00 . . . was made in about May, 1925, although in 1924 it was discussed and agreed on that if we did get these restrictions off, that he would pay me $10,000.00. . . . The agreement with respect to the $10,000.00 was made in the month of May, 1925, about a year prior to the time the restrictions were removed. We had discussed there would be a charge for my work two years previous to the time of the release, in the year 1924. We discussed it as early as 1923."

Among other reasons invoked to support the refusal of defendant's instruction 4, plaintiff says that the issues were fully covered by other instructions. Plaintiff's case was bottomed on the proposition that he had an agreement with defendant whereby he was to do certain work and that if he did this work, defendant was to pay him $10,000. The answer, as stated, was a general denial. There is no contention that plaintiff did not make a submissible case on the facts. Plaintiff's instruction, at some length, hypothesizes the facts to be found before plaintiff could recover, and among the requirements was the finding that plaintiff was employed by defendant, etc., and that while "under said employment defendant orally agreed to pay" $10,000 for his

services. Defendant's given instruction No. 1 was the converse of plaintiff's instruction on the issue of the agreement to pay $10,000, which was the *bone* of contention. And defendant's given instruction No. 2, on the burden of proof, is to the same effect.

"It is not error to refuse an instruction when the subject matter thereof is covered by other instruction." [Arnold v. May Dept. Stores, 337 Mo. 727, 85 S. W. (2d) 748, l. c. 755, and cases there cited.] It is true that defendant, as to the conversation at the hospital, testified to the effect, as appears, supra, that plaintiff said that he would make no charge for whatever he did about the restrictions, etc., that it was "not a question of money," but "of old friendship." But "it is not necessary to submit by instruction every disputed evidentiary fact arising in a case even if the same is pleaded, in an instruction purporting to cover the whole case. It is only necessary to submit the essential facts warranting a recovery and not omit the essential ultimate facts which would defeat such recovery or *vice versa*." [Acme Harvesting Machine Co. v. Gasperson et al., 168 Mo. App. 558, l. c. 577, 153 S. W. 1069.]

The judgment should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.