LAFAYETTE JOHNSON, Appellant, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Respondent, and MILTON SLOTKIN, Doing Business Under the Name of ABBEY RENTAL, Appellant.—No. 40545.—214 S. W. (2d) 5.

Division Two, September 13, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, October 11, 1948.

*Parker & Knipmeyer* and *Walter A. Raymond* for appellants.

*Charles L. Carr, Frank J. Rogers,* and *Cooper, Neel, Sutherland & Rogers* for respondent.

[6] BOHLING, C.—Lafayette Johnson, plaintiff, and Milton Slotkin, party defendant below, prosecute this appeal from a judgment for the Kansas City Public Service Company, a corporation (hereinafter sometimes designated Service Company), entered upon respondent's after-trial motion for judgment in accordance with its motion for a directed verdict at the close of the evidence. The action was for damages for personal injuries to plaintiff and damages to defendant Slotkin's truck, operated by plaintiff, occurring in a street-intersection automobile-street car collision. The jury returned a verdict for plaintiff for $13,500 and for defendant Slotkin for $250, but, as stated, the judgments thereon were set aside. The issues cover the timeliness of appellants' notice of appeal, the scope of the issues available for review and, if available, whether a submissible case was made on the Service Company's duty to slacken speed under the humanitarian doctrine, and, if so, then whether certain errors of law occurred prejudicial to the Service Company during the course of the trial.

In this case at the close of plaintiff's evidence and again at the close of all the evidence defendant Service Company filed a motion for a directed verdict under Code Sec. 112.[1] Defendant Service Company filed timely motions to set aside the verdicts and judgments thereon and enter judgment for [7] it in accord with its motion for a directed verdict (Code Sec. 113) and also filed separate motions

---

[1]Section references are to R. S. 1939, and like section numbers in Mo. R. S. A., unless otherwise indicated. References to the General Code for Civil Procedure (thus: Code Sec.) are found in Laws 1943, pp. 353-397, and appear in 3 Mo. R. S. A. with the sections numbered 847.1, 847.2 et seq., the decimal number corresponding with section number appearing in Laws 1943.

for new trial. On June 27, 1947, said defendant's motion for judgment was sustained, and record entries made accordingly. The court made no ruling on the Service Company's motion for new trial. Consult Code Sec. 118; Rule 3.24.[2] On June 30, 1947, plaintiff and defendant. Slotkin gave notice of appeal to this court "from the order and judgment" entered on June 27, 1947.

Respondent first says the appeal was premature; contending, there being no motion for a new trial on behalf of appellants after entry of judgment for respondent, said judgment did not become final until the lapse of thirty days after entry (Code Sec. 119 and Rule 3.24; see also Rule 3.25), and the notice of appeal should have been filed within 10 days after the expiration of said thirty-day period but not prior. Evans v. Barnham (Mo.), 184 S. W. 2d 424 and Christeson v. Christeson (Mo. App.), 190 S. W. 2d 568, are cited to the point.

Code Sec. 112 provides for "a motion. for a directed verdict" to replace our former demurrer to the evidence; and Sec. 113 authorizes one who has filed a motion for a directed verdict to move within 10 days after verdict to have the verdict and judgment entered thereon set aside and for judgment in accordance with his motion for a directed verdict. Motions for new trials are likewise to be filed within 10 days after entry of judgment. Code Sec. 116. The two motions may be joined or a new trial may be asked in the alternative. Code Sec. 113. So far as material, appeals are authorized "from any final judgment in the case." Code Sec. 126. Appeals are taken by filing a notice of appeal with the clerk of the trial court; but: "No such appeal shall be effective unless the notice of appeal shall be filed not later than 10 days after the judgment or order appealed from becomes final." Code Sec. 129.

The new Civil Code vested the Supreme Court with "power to promulgate rules necessary to harmonize" the provisions of said Code and also other statutes relating to Civil Procedure. Code Sec. 10(b). (Consult Mo. Const. 1945, Art. 5, Sec. 5, Laws 1945, p. 30.) Rule 3.24 was adopted pursuant thereto. Its stated purpose is to aid in ascertaining the time for taking an appeal and relates to Code provisions concerning motions for new trial (Secs. 116, 118, 119) and after-trial motions (Secs. 99, 114, 120), including motions for judgment as here involved (Code Secs. 112, 113). It provides:

"For the purpose of ascertaining the time within which an appeal must be taken, a judgment becomes final at the expiration of thirty days after the entry of such judgment, except when a timely motion for new trial is filed, in which event the judgment becomes final at the expiration of ninety days after the filing of such motion or, if such motion is passed on at an earlier date, then at the date of

---

[2]For rules of court see Appendix, 352 Mo. i et seq.

disposition of said motion. Authorized after-trial motions shall be treated as, and as a part of, a new trial motion for the purpose of ascertaining the time within which an appeal must be taken and all such after-trial motions shall be disposed of at the same time. Any authorized after-trial motion not passed on at the time the motion for new trial is determined shall be deemed overruled as of the same date. The filing and disposition of such motions has the same effect as to time for appeal in all cases whether or not the motion has any function other than to seek relief in the trial court. . . ."

If respondent's after-trial motion for judgment under Code Sec. 113 is to be treated as a new trial motion for the purpose specified and as provided in Rule 3.24, its legal effect, although the motion be sustained, is to permit of an appeal from the judgment entered on said motion. We think this is especially applicable to motions for judgment under Code Sec. 113 so far as the review of a case made is involved. Judgments are entered as of the day of the verdict. Code Sec. 116. When attacked by authorized after-trial motions, the court has occasion to review its trial action on the issues specified. We perceive no compulsory reasoning for delaying the notice of appeal when a judgment is substituted for the prior judgment upon an after-trial motion for judgment as the trial court has [8] had the privilege of reviewing its action at the trial with the parties having an opportunity to present their contentions. The wording of Rule 3.24 has this effect in harmonizing the Code provisions. It may be noted that under the Code provisions and the Rules that the limitation placed upon the time for filing a notice of appeal is the allowable maximum time therefor and that no restriction on filing such notice within said maximum period is explicitly stated. Code Sec. 122, Rules 3.24, 3.25. We hold the notice of appeal was not out of time.

Respondent further contends, since appellants did not file a motion for new trial, that the only issues for review are the question of jurisdiction over the subject matter and the sufficiency of the pleadings to state a claim against respondent (Code Sec. 140(a); Rule 3.23); and that the sufficiency of the evidence to make a submissible case for appellants may not be considered.

A motion for new trial serves a dual function. It seeks to obtain relief in the trial court by having that court grant a new trial to correct alleged errors occurring during the trial and, if overruled, to obtain relief on appeal by preserving for appellate review the alleged errors stated in the motion. Castorina v. Herrmann, 340 Mo. 1026, 1031(5), 104 S. W. 2d 297, 300[9, 10]; Banner Iron Works v. Roy R. Rosemond Co. (Mo.), 107 S. W. 2d 1068, 1070; Waterous v. Columbian Nat. L. Ins. Co., 353 Mo. 1093, 1105[4], 186 S. W. 2d 456, 460[7], and cases cited. In the instant case the trial court considered the sufficiency of appellants' evidence three times. It had

occasion on respondent's motion for judgment under Sec. 113 to review its action thereon during the trial; and, we think, it was for this reason in part that Rule 3.23, recognizing the provisions of Sec. 140(a), supra, was adopted. Rule 3.23 provides: "Allegations of error, in order to be preserved for appellate review, must be presented in the trial court in a motion for new trial; except . . . questions authorized by Section 113 to be presented in a motion for judgment . . ." The wording of this rule rejects any immutable necessity for again presenting the issue for review to the trial court that it be preserved for appellate review. Consult Lasswell v. Lasswell (Mo. App.), 192 S. W. 2d 206, 207[2]; Melenson v. Howell, 344 Mo. 1137, 1141[1], 130 S. W. 2d 555, 557[4, 5, 7]. Rule 3.27 authorizes the consideration of plain errors effecting substantial rights on appeal in the discretion of the court, though not raised in the trial court or preserved for review, when deemed proper to prevent manifest injustice. The point is ruled against respondent.

The purposes of the new Code and Rules are to promote the orderly administration of justice and to seek the just, speedy, and inexpensive determination of every action. Code Secs. 2 and 10(b). When allowable after-trial motions are filed together with a motion for a new trial with a prayer for relief in the alternative, the trial court, if it sustains the after-trial motion, should also pass on the motion for new trial, making its ruling in the alternative, and specify, as contemplated, the ground or grounds for its action. Consult Montgomery Ward & Co. v. Duncan, 311 U. S. 243, 61 S. Ct. 179, 85 L. Ed. 147, and Annotation, l. c. 155, re Federal Rule 50(b) like our Code Sec. 113; Pruitt v. Hardware Dealers Mut. F. Ins. Co., 112 F. 2d 140; Allegheny County v. Maryland Cas. Co., 132 F. 2d 894.

Whether plaintiff made a submissible case on defendant's duty to slacken speed under the humanitarian doctrine calls for the facts. The accident occurred in the intersection of Wayne and 31st streets (about the midline of Wayne street), Kansas City, Missouri, January 10, 1945, about 1:00 p. m. It was a clear afternoon with the streets dry, there being no snow or ice. Wayne is a north and south street, approximately 25 to 27 feet wide, and 31st is an east and west street, approximately 40 feet wide, with double street car tracks in the center, the north rail being 10 to 12 feet south of the north curb of 31st street. There is a slight upgrade on 31st proceeding west as one approaches Wayne. There is no stop sign on either street.

Plaintiff, a negro, was 42 years old and had been working for defendant Slotkin [9] for over a year, driving a ton-and-a-half Dodge truck, 20 to 22 feet in length. He was returning to the plant from a delivery, proceeding and intending to continue south on Wayne. He testified he stopped the truck north of where people walk across 31st street and while there that he did not see and also that he did

see the street car, placing it "about the end of the street" which his brief states means about the end of the block, the blocks there being "awfully short." He then started across 31st street and was entering the intersection when he "first" saw the street car approaching from the east. In his best judgment, it was then 60 feet from him and was traveling between 30 and 35 miles an hour and the truck was going about two miles an hour. The next time he saw the street car the front wheels of the truck were going on the track and the street car was 20 feet from him, still coming between 30 and 35 miles an hour, and according to his testimony and his brief the truck was not moving over two to three miles an hour. He testified the truck had good brakes and he could "stop it right now." One of his witnesses said it could be stopped almost instantly, as soon as you push the brake down. Plaintiff made no attempt to stop. He said he was trying to cross ahead of the street car, after he saw it 60 feet away.; quoting: "Well, my idea was I had in mind that I could cross and that the street car could slow down." There was no warning given by the truck or street car. Plaintiff, in answer to a leading question, put the speed of the truck at three to four miles an hour at the instant of impact but immediately corrected that, placing its speed at "two or three miles an hour" when struck. Plaintiff's witnesses Nash, William V. Abbott, and Mrs. Abbott also placed the speed of the street car at 30 to 35 miles an hour. The speed of the truck was placed by Abbott up to 25 miles an hour after it slowed down for the intersection. The speed of the street car was not slackened before the collision. Plaintiff's brief states the front of the street car struck the rear four-and-a-half to five feet of the truck.

Defendant's theory of the case conflicted with plaintiff's theory. Briefly it was: The motorman testified it was customary to reduce the speed upon approaching intersections and he had reduced the street car's speed from 25 to 20 miles an hour as he neared the intersection. He could not see north along Wayne until he was within 20 feet of Wayne. He estimated his speed at that time at 18 to 15 miles an hour. He first saw the truck about 50 or .55 feet north of 31st street, proceeding south at a speed from 25 to 30 miles an hour and three or four feet to the east of the center of Wayne. He immediately put on the emergency brakes, making them "screech," and reversed the motor. The truck did not stop at the intersection; in fact, there was no change in its speed, and it continued on in a straight line, and if it swerved to the west, it was not until a half second before the impact. The collision occurred in the center of Wayne street, and broke the air line to the street car brakes.

The cause was submitted solely on the humanitarian duty to slacken speed. There was testimony that the street car could have been stopped when traveling 35 miles an hour in 70 feet; 30 miles an hour in 60 to 65 feet; 18 miles an hour in 36 to 37 feet, and 15 miles an hour

in 30 feet; also that the speed of the street car could be slowed from 30 to 20 miles an hour in 40 to 45 feet; from 35 to 20 miles an hour in 50 feet; from 30 to 15 miles an hour in 50 to 51 feet; and from 20 to 10 miles an hour in 32 to 33 feet. These are approximate distances and the reaction time is stated to be one-half second.

Plaintiff contends he was in imminent peril "from the time he started up from the stop at the north curb line of 31st street." He says the truck moved "a total of possibly 33 feet" "in something like 11 seconds," a speed of two to three miles an hour, from this stop up to the impact. To reach his stated conclusion he relies upon cases wherein the plaintiff was oblivious to the approaching danger; stressing Hutchison v. Thompson (Mo.), 175 S. W. 2d 903, 910[5]; Knorp v. Thompson, 352 Mo. 44, 62, 65, 175 S. W. 2d 889[19, 20], 902; Marczuk v. St. Louis Pub. Serv. Co., 355 Mo. 536, 543, 196 S. W. 2d 1000, 1003, and like cases.

[10] Plaintiff had the burden of establishing defendant's negligence under the humanitarian rule. Knorp v. Thompson, 352 Mo. 44, 63[8], 175 S. W. 2d 889, 901[23]. Where obliviousness is a necessary element to a situation of imminent peril, the burden of proving obliviousness is upon plaintiff. Id., 352 Mo. 44, 61, 175 S. W. 2d 889, 899[16]; Banks v. Morris & Co., 302 Mo. 254, 267, 257 S. W. 482, 485[3]. Instead of meeting this burden, plaintiff's own testimony shows he was consciously attempting to cross ahead of the street car with the thought it could slow down for him. He continued at a steady speed of two to three miles an hour (that is, 2.9 feet to 4.4 feet a second—Zickefoose v. Thompson, 347 Mo. 579, 593, 148 S. W. 2d 784, 792[12]). He could stop the truck "right now," almost instantly, practically as quickly as he could push down the brake. Judicial notice has been taken that a heavily loaded truck traveling two to five miles an hour may be stopped "almost instantly," "within a very few feet." Dowler v. Kurn (Mo. App.), 119 S. W. 2d 852, 854, 857[5]. Consult also Chawkley v. Wabash Ry. Co. (Banc), 317 Mo. 782, 797, 297 S. W. 20, 23[2]; Leavell v. Thompson, 238 Mo. App. 130, 137, 176 S. W. 2d 854, 857. A defendant is not negligent under the humanitarian doctrine so long as a plaintiff is only "approaching" a position of imminent peril. Kimbrough v. Chervitz, 353 Mo. 1154, 1160, 186 S. W. 2d 461, 465[6]. In these circumstances the motorman of the street car had the right to assume plaintiff would stop in a place of safety. Shepherd v. Chicago R. I. & P. Ry. Co., 335 Mo. 606, 610, 72 S. W. 2d 985, 987[1]; State ex rel. St. L. & S. F. Ry. Co. v. Reynolds, 289 Mo. 479, 487(II), 233 S. W. 219, 222[2, 3]; Knorp v. Thompson, 352 Mo. 44, 61[6], 64, 175 S. W. 2d 889, 900[19], 902; Elkin v. St. Louis Pub. Serv. Co., 335 Mo. 951, 957, 74 S. W. 2d 600, 603[6]; Smithers v. Barker, 341 Mo. 1017, 1026, 111 S. W. 2d

47, 52[5]. It was said of similar facts in Smithers v. Barker, l. c.s 1027 and 53, respectively:

"Certainly when a person knowing of the near approach of an oncoming vehicle deliberately (with ability. to stop) goes into its path, either defiantly or in an attempt to take the right of way or 'to beat it across' or otherwise acting to place all responsibility for avoiding contact upon the operator of such vehicle, the zone of his peril is very narrow and the duty of such operator to act does not commence until such person is actually in its path or so close to it that it is apparent (at the rate of speed and manner he is moving) that he will not stop before reaching it. [Citing authorities.] This is because a person, who is not oblivious and has the ability to stop, is not in a position of any peril whatever (certainly not imminent peril) when he is merely moving toward the path of a moving vehicle, and he does not come into a position of imminent peril therefrom until he is directly in the path of such vehicle or so close thereto that he cannot stop short of its path. [Citing authorities.]" See also Lotta v. Kansas City Pub. Serv. Co., 342 Mo. 743, 750 [1, 2], 117 S. W. 2d 296, 298, 300[1-4]. In State ex rel. v. Reynolds, supra, it is stated that a plaintiff, who is not oblivious, has a duty to see just where the approaching vehicle is and the rate of its speed before he attempts to cross its path.

With the truck approaching the track at a speed of two to three miles an hour, and subject to being stopped "right now," and the street car traveling 30 to 35 miles an hour and not diminishing its speed, as established by plaintiff and his witnesses, there is no substantial evidence of record showing that the speed of the street car could have been so slackened as to permit the truck to clear and avoid the collision after. the truck approached so near to the track that plaintiff, under his evidence, could not stop and avoid the collision, that is, entered the imminent peril zone. Plaintiff's contention that he was in imminent peril from the instant he started from his stop and for eleven seconds is without merit. To place a duty on the motorman to slacken the speed of the street car prior to plaintiff entering the imminent peril zone would extend the humanitarian doctrine to embrace primary or antecedent negligence. This may not be done. State ex rel. Fleming v. Bland, 322 Mo. 565, 15 S. W. 2d 798; Chastain v. Winton, 347 Mo. 1211, 1220, 152 S. W. 2d 165, 169[5].

 [11] Plaintiff also discards his own testimony and that of his witnesses that the street car was traveling 30 to 35 miles an hour and never diminished its speed and argues from the testimony of defendant's witness, the motorman, that he had slowed the street car to 15 to 18 miles an hour at the time it neared the intersection, and retains plaintiff's testimony that the truck traveled at a speed of two to three miles an hour. Defendant contends plaintiff may not do

this, pointing out that plaintiff charged defendant with primary negligence, among other things, in operating its street car at a "high, dangerous, excessive and unusual" speed and in failing to have it "under reasonable, safe control"; that plaintiff and his witnesses testified the speed of the street car was 30 to 35 miles an hour and that it did not slow down prior to the collision; that this was plaintiff's trial theory of the case and plaintiff may not adopt defendant's theory that the street car was traveling 15 to 20 miles an hour when all the evidence shows said speed to be a usual and normal speed and at war with plaintiff's theory of the case. Elkins v. St. Louis Pub. Serv. Co., 335 Mo. 951, 958, 74 S. W. 2d 600; 603; Dilallo v. Lynch, 340 Mo. 82, 88, 101 S. W. 2d 7, 10[2, 3]; Meese v. Thompson, 344 Mo. 777, 782[1], 129 S. W. 2d 847, 850[1]; Stuernagle v. St. Louis Pub. Serv. Co., 357 Mo. 904, 211 S. W. 2d 696, 697[3]. Defendant argues plaintiff would twist the testimony of the witnesses into meanings not within the language used. For instance: Plaintiff stresses and argues from a statement by the motorman that plaintiff would have cleared the street car in one-half of a second. The center of the front of the street car struck the truck about four-and-a-half to five feet from its rear. The motorman's statement could be true if the truck were traveling 25 to 30 miles an hour as testified to by the motorman but a physical impossibility if the truck were traveling only two, or three, or four, or even five miles an hour. However, accepting the lower figures for the speed of the street car would not change the result as plaintiff did not remove his case upon a duty to slacken speed from the field of conjecture and plant it on a basis of fact. The imminent peril zone was very narrow with plaintiff able to stop "right now." A difficulty with plaintiff's case is that at a speed of two to three miles an hour it would take a 22 foot truck approximately five seconds to pass a given point and approximately seven seconds to clear the path of the street car.

The judgment is affirmed. *Westhues* and *Barrett*, *CC.*, concur.

PER CURIAM:—The foregoing opinion be BOHLING, C., is adopted as the opinion of the court. *Leedy* and *Ellison*, *JJ.*, concur; *Tipton*, *PJ.*, not sitting.