244 S.W.2d 45 (1951)
NEWMAN
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 42680.
Supreme Court of Missouri, en Banc.
November 12, 1951.
Motion for Rehearing Withdrawn December 10, 1951.
Edward W. Fredrickson, William L. Mason, Jr., St. Louis, for appellant.
Coburn, Storckman & Croft, Thomas L. Croft and Rexford H. Caruthers, all of St. Louis, for respondent.
TIPTON, Judge.
This is an action for damages brought by Marion Nickelson for personal injuries he received on March 17, 1949, when he *46 was struck by one of the streetcars operated by respondent. The jury returned a verdict for Nickelson in the sum of $5,000 but the trial court sustained respondent's motion for a new trial. From this order Nickelson duly appealed to the St. Louis Court of Appeals. While the appeal was pending Nickelson died and his administratrix, Pearl Newman, was substituted as the party appellant. The order of the trial court granting a new trial was reversed and remanded with directions to reinstate the verdict and judgment by the St. Louis Court of Appeals. Its opinion is reported at 238 S.W.2d 43. We ordered the case transferred for our review.
On the date plaintiff received his injuries he was crossing Broadway from east to west at a point almost 35 feet north of the intersection of that street with Salena Street in the city of St. Louis. Respondent operates streetcars both north and south on Broadway.
Plaintiff was en route to a tavern on the west side of Broadway, traveling in a northwest direction. When he got within 2 feet east of the east rail of the northbound streetcar track to stopped; he then proceeded northwest to a point a foot west of that rail; he then backed to a point east of that rail; he then started up again to the east rail of that track and then back 2 feet for the third time. At no time after he stopped near the east rail did he get more than 2 feet east of that rail. Plaintiff testified that during all of the time he was in the street he was "tangled up" because of the traffic. Other witnesses testified that he was "weaving" and stepping back and forth or "staggering" and did not appear to be normal, and looked like he was either drunk or sick. According to defendant's operator, plaintiff did not look either way after he stepped back the first time.
Plaintiff testified that after he got out into the street he saw a streetcar coming from the north and waited for it to pass, and when he first saw the one from the south it was "right at" him. He said he did not know if he was hit by an automobile or a streetcar.
However, the other witnesses, including the motorman, testified he was hit by the streetcar. The motorman further testified that he first saw plaintiff when he came out from between two parked automobiles on the east side of Broadway and walked almost to the east rail the first time without stopping. He observed that plaintiff was unsteady on his feet but could not tell whether it was from drinking or whether he was a cripple. He stated that after he saw plaintiff near the east rail he reduced the speed of the streetcar to 7 miles an hour; that when he was only 5 feet from him, the plaintiff stepped forward toward the car. He also testified that he stopped the streetcar in 9 feet after he applied the brakes.
There was testimony that no warning was given the plaintiff by the operator of the streetcar.
The above evidence seems to be sufficient to pass on the points raised on this appeal because the motion for a new trial was granted on the ground that the court erred in giving the instructions requested by plaintiff.
There were only two instructions submitted by plaintiff and given by the trial court, and since the court did not specify which instruction was erroneous the burden is on respondent on this appeal to point to the erroneous instruction and to the error which it is purported to contain. Supreme Court rule 1.10.
Respondent only contends that instruction No. 3 is erroneous. It is as follows:
"The court instructs the jury that even though you may find and believe from all of the evidence in the case that the plaintiff was himself guilty of negligence which directly contributed to cause his injury, if any; you are further instructed that if you find and believe from the evidence that plaintiff was upon Broadway at the time and place shown to you in the evidence; and if you further find and believe from the evidence that at said time and place he was in a position of imminent peril of being struck by the streetcar described in the evidence; and if you further find and believe from the evidence that he was oblivious of *47 his peril; and if you further find and believe from the evidence that the operator of the street car saw, or in the exercise of ordinary care could have seen, the plaintiff in such position and that he was oblivious of his peril; and if you further find and believe from the evidence that thereafter, and by the exercise of ordinary care in the use of the means and instrumentalities at hand, and with reasonable safety to said operator, the said streetcar, all the passengers on the same, and all other persons and vehicles in the vicinity, if any, the said operator could have avoided striking plaintiff with the said streetcar by stopping the same or by sounding a timely warning of the approach of the same; and if you further find and believe from the evidence that the said operator failed to exercise ordinary care in either or both of the particulars aforesaid after he saw, or in the exercise of ordinary care could have seen, the plaintiff in such position and that he was oblivious of his peril; and if you further find and believe from the evidence that as a direct result of such failure the said streetcar struck the plaintiff; and if you further find and believe from the evidence that the plaintiff was injured; and if you further find and believe from the evidence that his injuries were directly due to his being struck by the said streetcar; then you are instructed that your verdict should be for the plaintiff and against the defendant."
In its argument and brief filed in this court the respondent relies solely upon our recent case of Cable v. Chicago, B. & Q. Ry. Co., 236 S.W.2d 328, to sustain the action of the trial court in the granting of a new trial. In its brief respondent says that under the Cable case the trial court in a humanitarian case must submit (1) specific facts so as to allow the jury to reach a conclusion as to when, where and how the plaintiff's position of peril arose, and also (2) that a humanitarian instruction which by its language permits a finding of approaching imminent peril is prejudicially erroneous. This is not a correct statement of the holding in the Cable case. If it were, the Cable case would be overruling our previous cases without directly stating that they were overruled, particularly our case of Perkins v. Terminal R. Ass'n, 340 Mo. 868, 102 S.W.2d 915.
In the Perkins case, we said, 102 S.W.2d loc. cit. 923: "Nor do we think the instruction is erroneous because it failed to require a finding as to where the position of imminent peril began. If we understand the defendant's position correctly, it would require the court to instruct the exact place where the position of peril began. In other words, it would require the court to say in the instruction that under the circumstances plaintiff's position of peril did not begin until he was within a certain distance from the track. The exact point where the position of peril began was for the jury to determine under the evidence."
The above holding was supported by our cases of Allen v. Kessler, Mo.Sup., 64 S.W.2d 630 and Kloeckener v. St. Louis Public Service Co., 331 Mo. 396, 53 S.W.2d 1043. The same thought is stated by the St. Louis Court of Appeals in the case of Villinger v. Nighthawk Freight Service, 104 S.W.2d 740, loc. cit. 742, in the following language: "The precise point where plaintiff's truck first got into the danger zone is not a question of law for the court, but a question of fact for the jury." The Perkins case further held such an instruction must "require the jury to find that the plaintiff was in `a position of imminent peril,' and that was the ultimate or issuable fact for the jury to determine." 102 S.W.2d loc. cit. 921.
There is nothing in the Cable case when properly read and analyzed that could be construed as an attempt to overrule the Perkins case but, on the contrary, after quoting from the Perkins case the Cable case expressly states, "Our holding in this case is not in conflict with that decision." [236 S.W.2d 335.]
The Cable case followed our case of Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 51, which was a non-oblivious humanitarian case. Under the plaintiff's facts in the Smithers case, the plaintiff was on the opposite side of the intersection from the defendant's automobile and he could not have been in a position of imminent peril until he drove into the path of the defendant's automobile or so near thereto that he *48 was unable to keep from going on into it, and when the instruction in that case placed a duty upon the defendant to act at all times after the plaintiff's automobile was "entering into, upon and crossing said intersection" made that instruction under the facts of that case one of affirmative misdirection and therefore prejudicially erroneous.
An opinion of a court must be read as a whole to see what it correctly holds and no one sentence or clause must be seized upon for its correct interpretation. The Cable case does not hold what respondent contends it holds. The Cable case holds that under the plaintiff's evidence he could not be in a position of imminent peril prior to the time he stopped or almost stopped and before he proceeded at an accelerated speed toward the crossing, yet "The instruction `indefinitely extended the field within which vigilance under the humanitarian doctrine was exacted' and the giving of it was reversible error." 236 S.W.2d loc. cit. 334-335.
We again want to emphasize our holding in the case of Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 970, that a defendant is under no duty to do anything under a humanitarian rule until the plaintiff comes into a position of imminent peril and that an instruction that imposes any duty on a defendant prior to that time is reversible error. Therefore, the phrase, "approaching * * * a position of imminent peril", and similar phrases in a humanitarian instruction are prejudicial error.
We have already quoted instruction No. 3, which was plaintiff's instruction that submitted the case on the humanitarian theory of failure to stop or failure to sound a warning. Respondent contends that this instruction permitted the jury to find that the plaintiff was in a position of imminent peril at any place on Broadway. The hypothesized facts relating to the zone of peril are as follows: "* * * if you find and believe from the evidence that plaintiff was upon Broadway at the time and place shown to you in the evidence; and if you further find and believe from the evidence that at said time and place he was in a position of imminent peril of being struck by the street car described in the evidence; and if you further find and believe from the evidence that he was oblivious of his peril; and if you further find and believe from the evidence that the operator of the street car saw, or in the exercise of ordinary care could have seen, the plaintiff in such position and that he was oblivious of his peril; * * *."
In other words, this instruction required that the jury find that (1) the plaintiff was in imminent peril; (2) that the plaintiff was oblivious to his peril; and (3) that the operator either actually or constructively knew that he was in peril.
Under the evidence offered by the plaintiff, he had crossed over and back the east rail of the track three times and at no time after he got to the track was he ever more than 2 feet east of the east rail. Plaintiff testified that he did not know of the approach of the streetcar that struck him until it was right on him and that he did not hear any bell. The operator of the streetcar testified that he was about opposite the middle of the fire department building located at the southeast corner of the intersection of Salena Street and Broadway when he saw plaintiff near this rail and it appeared then that he was in danger. The plaintiff was about 25 feet north of the intersection or about 65 feet north of the streetcar at that time. He further testified that he then reduced the speed of the streetcar from 15 to 7 miles an hour and started ringing the bell, but did not start to stop the streetcar until he was within 5 feet of plaintiff and actually did stop within 9 feet, and that the front part of the streetcar that extended 18 inches over the rails struck plaintiff. He testified that plaintiff was "unsteady on his feet, but I couldn't state whether it was from drinking or old age or whether he was crippled or what he was."
This instruction required the jury to find that plaintiff was in "a position of imminent peril," and that was the ultimate or issuable fact for the jury to determine. These *49 are ordinary English words. Perkins case, supra, and Bryant v. Kansas City Rys. Co., 286 Mo. 342, 228 S.W. 472.
The word "approaching" or any similar word was not used in any place in this instruction so the jury could not have been misled. This instruction restricted the finding to the time and place on Broadway where there was danger of plaintiff's being struck.
Moreover, it is a fundamental rule of law that instructions must be read together, and instruction No. 2 reads as follows: "By `position of imminent peril,' as used in the instructions of the Court, is not meant a place where there is just a mere bare possibility of an injury occurring; it means a place and position wherein there is certain danger." If there could be any doubt about the extent of the zone of peril, it was sufficiently restricted by instruction No. 2.
We, therefore, hold that instruction No. 3 is without error.
The order of the trial court granting respondent a new trial is hereby reversed and the cause remanded with directions to reinstate the verdict and judgment.
All concur.