**WELCH v. McNEELY.**

No. 43953.

Supreme Court of Missouri.

Division No. 2.

July 12, 1954.

Dearing & Matthes, Will B. Dearing, Hillsboro, for appellant-respondent.

Moser, Marsalek, Carpenter, Cleary & Carter, F. X. Cleary, St. Louis, Paul E. Fitzsimmons, St. Louis, for respondent.

STONE, Special Judge.

Plaintiff, Leslie L. Welch, sought in this action to recover $10,000 for personal injuries and property damage alleged to have resulted from a collision on U. S. Highway 61 south of St. Louis about 5:45 P.M. on May 25, 1951, between plaintiff's 1951 Mercury automobile and defendant's 1950 Ford automobile. Defendant interposed a counterclaim for $1,325. Upon trial, plaintiff's case was submitted solely upon defendant's alleged negligence under the humanitarian doctrine in failing to stop. The jury returned a verdict for defendant on plaintiff's cause of action and for plaintiff on defendant's counterclaim. Both parties appealed; but, defendant's appeal from the judgment against him on his counterclaim having been dismissed, the cause is presented on plaintiff's appeal alone.

Plaintiff, 66 years of age, parked his automobile, headed west, in a graveled areaway in front of the Pevely Rendezvous, a restaurant situated about 50 to 60

feet west of U. S. Highway 61, which at that point has a concrete roadway, four lanes and approximately 40 feet in width, and runs in a general northerly and southerly direction. Plaintiff said that, when he left the Pevely Rendezvous after eating, he backed his automobile a short distance, turned to his right or north, passed between the filling station (which was north of the restaurant building and some 20 feet closer to Highway 61) and pumps in front of it, turned again to his right or toward the east, and stopped with the front end of his automobile "bearing a little left or north," about one foot west of the west edge of the concrete roadway "to see if the highway was clear". Plaintiff's version of the accident was that, with unobstructed vision of 500 to 600 feet to the top of the slight upgrade to the north, he looked in that direction, saw no approaching vehicles, and started onto the highway at "a slightly north angle" with the intention of crossing the two south-bound lanes on the west side of the center line and then proceeding north in the inside north-bound lane east of the center line; that, when he was "in the first lane west" (i. e., the outside southbound lane), he observed for the first time defendant's south-bound automobile which was then 500 to 600 feet north of him and also in the outside south-bound lane; that plaintiff proceeded on his course, attaining a speed of not more than 12 miles per hour at the time of collision; that, when defendant's automobile was about 100 feet north of the point of accident, defendant swerved to his left "toward the center of the road"; and that, when the left front wheel of plaintiff's automobile was at the center line of the highway with the automobile headed "very much to the north", the right front portion of defendant's automobile struck the left front portion of plaintiff's automobile.

Defendant's version of the accident was that he was driving in a southerly direction at a speed of 40 to 45 miles per hour; that, after passing around a south-bound tractor-trailer unit (which was in the outside south-bound lane) about 500 feet north of the point of collision, defendant pulled back into the outside south-bound lane in front of the tractor-trailer unit; that, when about 150 feet north of the point of impact, defendant first saw plaintiff's automobile then about 20 feet west of the west edge of the pavement; that plaintiff was driving very slowly—"I would say he (plaintiff) started about at 5 miles an hour"; that defendant immediately began "easing to the left" so that, when defendant's automobile was some 15 to 20 feet from the point of collision, it had "eased" into the inside south-bound lane; that plaintiff did not stop before entering the highway; that, "when I (defendant) was about 20 feet from him (plaintiff), he pulled out directly in front of me"— "when he (plaintiff) pulled out there, hit the pavement, I was 20 feet away"; that defendant then "went for the brakes"; and that, when plaintiff's automobile "was between the first lane and the second lane" (i. e., between the outside and inside south-bound lanes), the right front portion of defendant's automobile struck the whole left front fender of plaintiff's automobile.

Roy D. Graham, a witness for defendant, testified that, immediately prior to the collision, he had been traveling in the inside south-bound lane about 90 feet behind defendant's south-bound automobile, which was in the same lane; that both witness Graham and defendant were traveling about 45 miles per hour; that, as defendant's automobile was passing around the south-bound tractor-trailer unit (then in the outside south-bound lane), and when defendant's automobile was about 20 feet from plaintiff's automobile, the latter "pulled out in the highway"; that the tractor-trailer unit, traveling 35 miles per hour, swerved to the righthand or west shoulder; and, that the collision between defendant's and plaintiff's automobiles occurred in the inside south-bound lane.

Other than his attending physician, the only witness called by plaintiff was Victor Myerscough, a brake mechanic, who testified as an expert on direct examination that, under the conditions existing at the scene of accident and "taking into consideration the reaction period", defendant's

1950 Ford automobile traveling at 50 miles per hour could have been stopped in "right" at 165 feet" and, traveling at 60 miles per hour, could have been stopped in 225 feet; and that, when traveling at 50 miles per hour, "you would go about 50 feet before you would get the brakes on". On cross-examination, witness Myerscough expressed the opinion that plaintiff's automobile traveling at a speed of 5 miles per hour could have been stopped in 6 or 7 feet.

▉▉▉▉ The theory, upon which plaintiff tried and submitted his case to the jury was (as plaintiff's counsel, in their statement of facts, said in epitomizing plaintiff's petition) that *"after he got onto Highway 61* he became in a position of imminent peril of being struck and collided with" and (as stated in the language of plaintiff's only verdict-directing instruction) "that the plaintiff *upon driving onto said Highway 61 became and was in a position of imminent peril* of being struck and injured by the automobile being driven by the defendant" and that thereafter defendant "saw, or by the exercise of the highest degree of care on his part could have seen, plaintiff's automobile * * * in a position of imminent peril * * * *in time thereafter* with the means and appliances at hand, and with reasonable safety to his automobile and the occupants thereof *to have stopped* his automobile, and thus and thereby have avoided the collision". By submitting his case on the sole ground of alleged humanitarian negligence in failing to stop, plaintiff abandoned all other grounds of negligence alleged in his petition, Wright v. Quattrochi, 330 Mo. 173, 49 S.W.2d 3, 7–8(5); Bode v. Wells, 322 Mo. 386, 15 S.W.2d 335, 338(7); Henry v. First Nat. Bank of Kansas City, 232 Mo.App. 1071, 115 S.W.2d 121, 127(1);

and, since plaintiff's theory in the trial court, as submitted in his only verdict-directing instruction, was that plaintiff came into a position of imminent peril *"upon driving onto said Highway 61",* plaintiff is restricted and held on appeal to the same theory, Pienieng v. Wells, Mo., 271 S.W. 62, 66(3); State ex rel. Athletic Tea Co. v. Cameron, 216 Mo.App. 683, 273 S.W. 746, 748(6), in keeping with the long-established and salutary principle that this court will review a case only upon the same theory upon which it was submitted in the trial court, Nance v. Atchison, T. & S. F. R. Co., 360 Mo. 980, 232 S.W.2d 547, 551(2); Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570, 575(11); Hutchison v. Thompson, Mo., 175 S.W.2d 903, 905(3); Stoll v. First Nat. Bank of Independence, 345 Mo. 582, 134 S.W.2d 97, 98(1, 2). We cannot consider this case, as plaintiff now urges us to do, on the theory that he came into a position of imminent peril *before* "driving onto said Highway 61", although it may be added that, upon the record, it would be difficult to justify broadening the zone of imminent peril very far, if at all, beyond and outside the highway [1].

Plaintiff's first assignment is that the court erred in giving defendant's Instruction 3, which is as follows:

"The Court instructs you that if you believe and find that at the time plaintiff's automobile entered a position of imminent peril the defendant could not, by the exercise of the highest degree of care, have prevented the collision by stopping his automobile, then, and in such event, plaintiff is not entitled to recover on his cause of action and you will find your verdict in favor of the

1. In this connection, consult and compare See v. Wabash R. Co., Mo., 259 S.W.2d 828, 831(4); Wilt v. Moody, Mo., 254 S.W.2d 15, 21; Turbett v. Thompson, 363 Mo. 577, 252 S.W.2d 319, 321(3); Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, 76(8); Wilkerson v. St. Louis Public Service Co., Mo., 243 S.W.2d 953, 955; Harrow v. Kansas City Public Service Co., 361 Mo. 42, 233 S.W.2d 644, 647(4); Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5, 10(11); Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S.W.2d 764, 768; Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47, 52–53; Wheeler v. Breeding, Mo.App., 109 S.W.2d 1237, 1242; Dean v. Moceri, Mo. App., 87 S.W.2d 218, 222; Section 480, Restatement of Law of Torts.

defendant on plaintiff's cause of action."

In a humanitarian case, " 'the defendant can either submit the exact converse of plaintiff's humanitarian submission, *or of any essential element thereof,* or he can submit facts (shown by his evidence) · which would disprove *one or more of the basic facts* of plaintiff's humanitarian submission' ". Colvin v. Mills, 360 Mo. 1181, 232 S.W.2d 961, 966(3); Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, 750(8). Although sometimes expressed in slightly different language, cf. State ex rel. Thompson v. Shain, 349 Mo. 27, 159 S.W. 2d 582, 585(2), it has been settled in Missouri, since the classic decision in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 484(2), that the essential elements or basic facts of "a cause of action under the humanitarian rule, stated in their simplest terms, * * * are contained in this formula: '(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if · it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) · defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary [or, in the operation of a motor vehicle, the highest] care to avert such impending injury; and (5) by reason thereof plaintiff was injured.' Evidence tending to prove these facts makes a prima facie case for plaintiff."

Turning to Instruction 3, we observe that it deals with two of the essential elements or basic facts of plaintiff's humanitarian case, i. e., (a) the imminent peril of plaintiff and (b) the ability of defendant thereafter to avert the impending accident by stopping his automobile. In a long and unbroken line of decisions, this court has held repeatedly that no duty whatever arises under the humanitarian doctrine, unless and until a situation of peril comes into existence, McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704, 707(2); Vietmeier· v. Voss, Mo., 246 S.W. 2d 785, 788(4); Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, 699(7); Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495, 498(1); Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 970(11), and as a logical corollary that a defendant has no duty so long as a plaintiff is *approaching* a position of imminent peril, Newman v. St. Louis Public Service Co., Mo., 244 S.W.2d 45, 48(2, 3); Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5, 10(10); Hilton v. Terminal R. Ass'n of St. Louis, 345 Mo. 987, 137 S.W.2d 520, 522–523(4, 5). It is only " 'when such peril arises [that] the doctrine seizes upon the situation as it then exists and requires the one operating the dangerous instrumentality to exercise [proper] care * * *, and *thereafter* to avoid the infliction of the threatened injury, if he can do so with the means at hand and without jeopardizing the safety of himself and others.' " Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, 75(6), and cases there cited.

A finding that plaintiff is in a position of imminent peril is a finding upon an ultimate or issuable fact for the jury to determine, and the phrase "a position of imminent peril" · is composed of ordinary English words which require no definition. Newman v. St. Louis Public Service Co., supra, 244 S.W.2d loc. cit. 48–49; Perkins v. Terminal R. Ass'n, of St. Louis, 340 Mo. 868, 102 S.W.2d 915, 921(11). Although plaintiff submitted his case in the trial court upon the theory that he came into a position of imminent peril *after*, and *not before*, he drove onto Highway 61, the precise place where, and time when, plaintiff came into such position of imminent peril were for the jury to determine, Paydon v. Globus, Mo., 262 S.W.2d 601, 603; Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 593; Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 698(7), 34 A.L.R.2d 972; and, "An instruction which permits the jury to determine that time and place is a proper one so long as the instruction does not contain language * * * which specifically directs a jury to, or makes likely that a jury will, find that

plaintiff was in a position of imminent peril at a time and place when and where he could not have been; in other words, so long as the instruction does not contain a misstatement as to where a position of imminent peril begins", Harrington v. Thompson, Mo., 243 S.W.2d 519, 525(9). In fact, it is "manifest error" for an instruction to advise the jury *when* plaintiff comes into peril. Wofford v. St. Louis Public Service Co., Mo., 252 S.W.2d 529, 533. In the light of the foregoing principles, we think it clear that Instruction 3 did not deal improperly with the imminent peril of plaintiff, one of the essential elements or basic facts of plaintiff's humanitarian case.

■ Plaintiff assails Instruction 3 because "the question of discovered or discoverable peril is entirely ignored". It is true that one of the essential elements or basic facts of a plaintiff's humanitarian case is that defendant had notice, either actual or constructive, of plaintiff's peril, Banks v. Morris & Co., supra, 257 S.W. loc. cit. 484(2); and, where discovered or discoverable peril is a real issue in the case, the failure to recognize and include this element in defendant's verdict-directing instructions may render such instructions confusing, misleading and erroneous. See Colvin v. Mills, supra (upon which plaintiff in the instant case places primary reliance), and Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892, 896, where "the real issue was whether the respective plaintiffs were observed or observable in time for defendants to have acted in averting the casualties." Silver v. Westlake, Mo., 248 S.W.2d 628, 632, 633.

■ However, omission of the element of discovered or discoverable peril in Instruction 3 in the instant case could not have been misleading or prejudicial in view of the fact that it was conceded and admitted that defendant actually saw plaintiff's automobile when it was still 20 feet west of the pavement, *before* it came into a position of imminent peril "upon driving onto said Highway 61". Cf. Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, 300(5). The live issue, and in fact the only sharply-contested issue, for determination by the jury was as to whether defendant could have averted the collision by stopping after plaintiff came into a position of imminent peril. Where "it is unmistakably apparent that certain facts are conceded, then, of course, such facts are no longer at issue and should not be required to be submitted in an instruction". Meade v. Kansas City Public Service Co., Mo., 250 S.W.2d 513, 515(2); State ex rel. Fourcade v. Shain, 342 Mo. 1190, 119 S.W.2d 788, 789-790(3).

■ The failure of Instruction 3 to require a finding upon *another* essential element of plaintiff's humanitarian case, i. e., that plaintiff's peril was discovered or discoverable, simply cast an additional burden on defendant, of which plaintiff cannot complain. In the language of Burow v. Red Line Service, Inc., 343 Mo. 605, 122 S.W.2d 919, 920, where an analogous attack was made upon a defendant's instruction in a humanitarian case, "Logically considered this instruction is more favorable to plaintiff than it would have been if the requirement as to stopping * * * had been limited by inserting the words plaintiff says should have been inserted. *This is true because the instruction as written only authorizes a verdict for defendant if it was impossible, upon any hypothesis, for the * * * driver to have stopped * * *".* (Italics ours.)

■ Plaintiff further asserts that Instruction 3 is erroneous because "it is not a converse humanitarian instruction and totally fails to submit facts which would warrant a verdict in favor of the defendant". Although it might be "perhaps well enough described as, in the nature of a specific factual converse instruction", Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 464; Jants v. St. Louis Public Service Co., 356 Mo. 985, 204 S.W.2d 698, 704(10), we think it wholly unimportant what nomenclature may be employed to describe and classify the criticized instruction. The important thing is that Instruction 3 properly called for a finding upon an essential element or basic fact, i. e., whether (after

plaintiff came into a position of imminent peril) defendant could have averted the collision by stopping his automobile, which said finding, when made, utterly destroyed plaintiff's humanitarian case and made recovery impossible under plaintiff's submitted theory. It is only necessary that an instruction require the finding of substantive, *not* evidentiary, facts. Hilton v. Thompson, 360 Mo. 177, 227 S.W.2d 675, 679(2); Vrooman v. Hill, 347 Mo. 341, 147 S.W.2d 602, 605(2); Smith v. Greer, 216 Mo.App. 155, 257 S.W. 829, 831(10). Furthermore, a converse humanitarian instruction does not submit an affirmative defense and, therefore, does not need to be as specific as a sole cause instruction. Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562, 568(8).

Instruction 3 in the instant case is similar, in content and in effect, to instructions approved on appeal in Jants v. St. Louis Public Service Co., supra, 204 S.W.2d loc. cit. 703–704(10), Fantin v. L. W. Hays, Inc., Mo., 242 S.W.2d 509, 511 (Instruction C.), and Burow v. Red Line Service, Inc., supra, 122 S.W.2d loc. cit. 920 (Instruction 2), and to instructions given (but apparently not attacked) in Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742, 745 (Instruction 4), Wofford v. St. Louis Public Service Co., supra, 252 S.W.2d loc. cit. 532 (Instruction 7), and Dean v. Moceri, Mo. App., 87 S.W.2d 218, 219–220 (Instruction 2).

■■■ For still another reason, we are constrained to hold that the giving of Instruction 3 could not have constituted prejudicial error. It is a fundamental principle that the instructions must be read together and considered as a whole. Newman v. St. Louis Public Service Co., supra, 244 S.W.2d loc. cit. 49(4); Griffith v. Gardner, 358 Mo. 859, 217 S.W.2d 519, 526(14). This is not a case in which the criticized instruction positively or affirmatively misdirected the jury, or in which there was any conflict between the criticized instruction and others given. Stith v. St. Louis Public Service Co., supra, 251 S.W.2d loc. cit. 700(12); Lefkowitz v. Kansas City Public Service Co., Mo., 242 S.W.2d 530, 534(7); Harrow v. Kansas City Public Service Co., 361 Mo. 42, 233 S.W.2d 644, 648–649(7). Assuming, without so holding, that the language of Instruction 3, standing alone, was general, indefinite, or lacking in clarity, any such imperfection in that instruction was cured by plaintiff's Instruction 1; and, all of the instructions being read together and considered as a whole, the jury could not have been misled or confused by Instruction 3 and plaintiff could not have been prejudiced by the giving thereof. Romandel v. Kansas City Public Service Co., supra, 254 S.W.2d loc. cit. 594(22, 23); Rasp v. Baumbach, Mo., 223 S.W.2d 472, 474(5); Burow v. Red Line Service, Inc., supra, 122 S.W.2d loc. cit. 920(1, 2); Perkins v. Terminal R. Ass'n of St. Louis, supra, 102 S.W.2d loc. cit. 923(12); Carle v. Akin, Mo., 87 S.W.2d 406, 409(2); Larey v. Missouri-Kansas-Texas R. Co., 333 Mo. 949, 64 S.W.2d 681, 684(3); Luck v. Pemberton, Mo.App., 29 S.W.2d 197, 198(4).

■■■ Plaintiff's further contention that Instruction 3 was "unsupported by any evidence and was totally unwarranted under the evidence" is predicated upon (a) plaintiff's theory *on appeal* that he came into a position of peril *before* "driving onto said Highway 61" (which, as we have pointed out, was *not* the theory on which the case was tried and, therefore, is not available to plaintiff here), and (b) that there was no evidence as to the distance within which defendant's automobile could have been stopped when traveling 40 to 45 miles per hour, the speed shown by defendant's evidence. Plaintiff's evidence included no estimate of the speed of defendant's automobile at any place or time. Having in mind the testimony of plaintiff's witness Myerscough as to stopping distances and the testimony of both defendant and witness Graham that plaintiff's automobile drove onto the highway when the two automobiles were only 20 feet apart, we think that there was evidence from which the jury properly might have inferred and found that, after plaintiff entered a position of imminent peril, defendant could not have averted the collision by stopping his automobile. In determining the propriety of Instruction 3,

the evidence is to be viewed in the light most favorable to defendant. Colvin v. Mills, supra, 232 S.W.2d loc. cit. 963(2); Kimbrough v. Chervitz, supra, 186 S.W.2d loc. cit. 464(4). Under the facts of the instant case, we conclude that the giving of Instruction 3 was not prejudicially erroneous.

■ Plaintiff's only other assignment upon appeal is that the trial court erred "in overruling an objection to a question propounded by defendant's counsel to former Trooper Dickey (who was not an eyewitness to the accident) as to whether the witness was able to form an opinion as to where the collision occurred". There is no doubt but that plaintiff's objection to this question should have been sustained, Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 247–249(9, 10); but, it does not follow that, for this error, the cause should be reversed and remanded for another trial. The question, to which plaintiff objected, and the answer thereto are as follows:

"Q. And from what you saw there were you able to form an opinion as to in which lane this collision occurred? A. I found the debris to be mainly in the second lane of the highway, that is, the lane just east—Correction: Just west of the center line."

It is plain that, although the witness was afforded an opportunity to state whether he had formed "an opinion as to in which lane this collision occurred" and perhaps to inject his opinion at the same time, he did not do so. His answer, which was not responsive to the question but which plaintiff's counsel did not move to strike, reflected factual evidence which would have been entirely proper and competent, if responsive. In fact, witness Dickey *theretofore* had given substantially the same testimony, *without objection by plaintiff's counsel.* Furthermore, it is obvious that the *north-and-south* distance afforded for stopping and thus defendant's ability to stop could not have been affected materially by the *precise east-and-west* location of the point of impact with respect to the center line of Highway 61. Upon the record before us,

we cannot find that plaintiff was prejudiced by the overruling of his objection to the quoted question propounded to witness Dickey. Cox v. Wrinkle, Mo., 267 S.W.2d 648; Pulse v. Jones, Mo., 218 S.W.2d 553, 555–556.

The judgment should be and is affirmed.

LEEDY, Acting P. J., and DEW, Special Judge, concur.