JAMES M. SHEPHERD v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY and LOUIS STEINSICK, Appellants.—72 S. W. (2d) 985.

Division One, June 22, 1934.

*Luther Burns, Henry S. Conrad, L. E. Durham, Hale Houts, I. M. Lee* and *R. E. Kavanaugh* for appellants.

*Pross T. Cross, Maurice P. Murphy* and *Gerald Cross* for respondent.

GANTT, J.—Action to recover damages resulting from a collision between a passenger train of defendant company and an automobile driven by plaintiff. The other defendant was the engineer of the train. Judgment against both defendants for $8,000 for personal injuries and $800 for damages to the car. Defendants appealed.

The petition charged a violation of the humanitarian rule in that "the engineer saw and knew, or by the exercise of ordinary care, could have seen and known that plaintiff was in and going into a

position of peril in time to have, by the exercise of ordinary care, prevented injury to plaintiff and damage to his automobile by either stopping the train, checking the speed, or giving a warning signal, but that he negligently failed to do so.''

The answer was a general denial with an affirmative defense, the consideration of which is unnecessary. The reply was a general denial. Defendant challenges the refusal of its instruction in the nature of a demurrer at the close of the evidence.

The evidence favorable to plaintiff may be stated as follows:

The collision occurred at 6:12 P. M., on November 15, 1927, at the intersection of defendant company's track with Tenth Street in St. Joseph. At the intersection the street is level, paved, smooth, sixty feet wide and without sidewalks. At the time it was foggy, smoky and dark. The intersection was brilliantly lighted. The railroad yards are located five hundred feet west of the intersection and immediately west of Hickory Street. The yards also are brilliantly lighted. Other lights are west of the intersection and along the main line tracks. On a foggy, smoky night the headlight of an engine in the vicinity of the yards five hundred feet west of Tenth Street crossing may be taken by a person on said crossing for a stationary light in said yards. There was testimony by a witness for plaintiff that on such a night a person looking westward from said crossing would not know that a train was approaching until the engine was seventy-five feet from the crossing.

Tenth Street runs north and south and is intersected by five railroad tracks. The north track is the defendant company's track and where the collision occurred. The Burlington passenger track intersects said street forty-six feet south of defendant company's track. The Santa Fe track intersects said street forty-two feet south of the Burlington passenger track. The first Burlington freight track intersects said street eighty-three feet south of the Santa Fe track. The second Burlington freight track intersects said street seven feet south of the first Burlington freight track. The distance between the rails of the tracks is five feet, eight inches. It is about two hundred feet from the south rail of the south Burlington freight track to the south rail of defendant company's track. The watchman's shanty is on the east side of the street and between the Santa Fe track and Burlington passenger track. There was no watchman on duty at the time plaintiff drove across the intersection. Residences and other buildings are located on the west side of the street and south of the Burlington freight tracks. The three north tracks cross the street in a northwesterly and southeasterly direction.

Defendant's train of three coaches and an engine approached the intersection from the northwest. It originated at the Union Station about a mile northwest of the crossing and moved in a southeasterly direction to the point of collision at a speed of ten miles an hour.

It could have been stopped in ten to fifteen feet. The headlight on the engine and the lights in the coaches were lighted. There was no warning signal by either the engine bell or whistle. Plaintiff was seventy-one years of age, with good eyesight and hearing. In driving the automobile he was seated on the left side, and no one was in the automobile with him. The headlights on the automobile were lighted. Plaintiff was familiar with the intersection and knew that a train on defendant company's track might, at any time, approach from the west and proceed over the crossing. As he approached the intersection from the south he lowered the window on his left that he might have a better view of the tracks toward the west. He then drove the automobile on the east side of the street and at a speed of eight to ten miles an hour to the point of collision. He could have stopped the automobile in two to four feet. As he proceeded across the tracks he continued to look east and west for approaching trains. About this time the automobiles on Tenth Street approached the crossing from the north and stopped north of the north rail of defendant company's track to permit said train to proceed over the crossing. It is one of the theories of plaintiff that the headlights on these automobiles tended to blind him. He did not so testify. However, a witness who made observations at the crossing testified that the headlight on an automobile approaching the crossing from the north tended to blind a person on the crossing. On the question of visibility plaintiff testified that he could not see the headlight of the engine and the lights in the coaches because of the foggy and smoky condition of the atmosphere; that he could not see west of the west line of the street, and that he knew nothing of the approaching train until the south side of the pilot of the engine collided with the automobile. The collision wrecked the automobile and injured plaintiff. He testified that he was rendered unconscious. The fireman testified that when plaintiff was taken from the wrecked automobile he said that "if he was on a railroad track he didn't know it."

We think the court should have directed a verdict for defendant. The engineer was seated on the south side of the engine cab. In view of the lighted condition of the crossing, he must be charged with having seen the plaintiff driving the automobile northward through the intersection. The engine and automobile moved to the point of collision at the same speed. At the time the automobile entered the intersection from the south, it was two hundred feet from the point of collision. At said time the engine must have been the same distance from said point. There was no change in the speed of the automobile as it proceeded through the intersection. And there was no evidence tending to show that the manner of plaintiff as he drove northward and across the tracks indicated obliviousness. Indeed, he continued to look westward through the open window of the automobile. Furthermore, there was no evidence tending to

show that the engineer should have known that plaintiff could not see the headlight of the engine and the lighted coaches through the foggy and smoky atmosphere. On the contrary two automobiles approaching the crossing from the north stopped a short distance from the north rail of defendant company's track. This indicated that the headlight of the engine was visible to a person in the intersection. Furthermore, if the headlights of the automobiles north of defendant company's track tended to blind plaintiff, it follows that the headlight of plaintiff's automobile tended to blind the drivers of the automobiles approaching defendant company's track from the north. It is clear that the headlights on plaintiff's automobile did not prevent the drivers of said automobiles from seeing the approaching train. And there was no evidence tending to show that the automobiles approaching from the north tended to blind the plaintiff when he was looking westward. Furthermore, there was no evidence tending to show that the engineer should have known that the headlights of the automobiles approaching from the north tended to blind plaintiff when he looked westward for an approaching train. In other words, there was no evidence tending to show that the engineer should have known that plaintiff could not see the approaching train, and for that reason was oblivious. In this situation the engineer was authorized to assume that plaintiff would stop the automobile before entering a position of peril.

In view of plaintiff's ability to stop the automobile within from two to four feet, he was not in a position of peril until the front of the automobile was within six or seven feet of the south rail of defendant company's track. At that time the front of the engine was only seven or eight feet from the point of collision. The engineer could not have then avoided the collision by either stopping the engine, slackening its speed, or warning plaintiff by either the bell or the whistle on the engine.

Furthermore, the front of the engine was visible to plaintiff when it was at or near the west line of the street. At that time the front wheels of the automobile must have been between the rails of the track immediately south of defendant company's track. In the absence of conduct on the part of plaintiff indicating obliviousness, the engineer, at that time, could assume that plaintiff knew of the approaching train and that he intended to cross the track immediately south of defendant company's track and stop in a place of safety between said tracks, thereby permitting the train to pass over the crossing.

Plaintiff directs attention to his statement to the fireman that "if he was on a railroad track he did not know it." The engineer could not have known that plaintiff did not know he was driving over railroad tracks. Furthermore, plaintiff testified on four different occasions that he approached the point of collision with full knowl-

edge of all the tracks; that he was expecting a train at any time and that he constantly looked westward for an approaching train.

The burden was on plaintiff to make proof of facts and circumstances tending to make a submissible case under the humanitarian rule. He failed to do so, and the judgment should be reversed. It is so ordered. All concur.