FRANK CARDIS v. O. M. J. ROESSEL—NASH KELVINATOR SALES CORPORATION (NASH MOTORS DIVISION), A CORPORATION, AND NASH KELVINATOR CORPORATION, A CORPORATION.—186 S. W. (2d) 753.

Kansas City Court of Appeals. March 5, 1945.

*Hogsett, Trippe, Depping & Houts* for appellants.

1236

*Homer A. Cope, Cope & Hadsell* and *Walter A. Raymond* for respondent.

SPERRY, C.—This is a suit for damages based on personal injuries received by Frank Cardis, plaintiff, when he was struck by, or collided

with, an automobile owned by defendants, Nash Kelvinator Sales Corporation and Nash Kelvinator Corporation, and driven and operated by their agent, defendant, O. M. J. Roessel. Trial to a jury resulted in verdict and judgment for plaintiff in the amount of $6000. Defendants appeal.

On the west side of Grand Avenue and on the north side of 18th Street, in Kansas City, is located what is known as the Tankar filling station property. Abutting this property on the north is a three story brick building occupied by Mid-Way Auto Supply Company. Along the west side of Grand Avenue at this point the sidewalk is fifteen feet wide and is traversed by a driveway leading into the filling station, extending from the south line of the Auto Supply Company building to a point about thirty-six feet south thereof. Some twenty-one feet south of the above driveway another driveway leads from Grand Avenue into the filling station. About thirty-one feet west of the west line of Grand Avenue and paralleling the space between the driveways there is a concrete island extending from north to south, upon which is located three gasoline pumps. Some thirty feet south of said island is a rectangular filling station building fronting southeast.

Plaintiff testified to the effect that, at the time of the accident, he was a man in his fifties. Since birth he had been afflicted with a disease of the eyes, known as retinitis pigmentosis, which had grown progressively worse until, at the time of the accident, his side vision was impaired but his front vision was good. At the time of the trial his side vision was almost completely gone and his front vision was seriously impaired. At the time of the accident he was engaged in selling hardware which he personally delivered. He was walking southward on the west side of Grand Avenue, about in the middle of the west half of the sidewalk, about three and a half feet east of the building line, and continued in that general direction and manner until he was struck. He carried a white cane in his left hand and a portfolio in his right. He was walking briskly, head up, looking straight to the front. When he was from ten to fifteen feet south of the Mid-Way Auto Supply Company building he suddenly saw a man, thru the side window of a car, directly in front of him, and was at the same instant struck and knocked down by the car. He did not see or hear the car prior to the above mentioned moment. At the time he was struck he was from ten to fifteen feet south of the Mid-Way Auto Supply Company building and about in the center of the west half of the sidewalk.

The deposition of Mr. Atteberry, an employee of the Tankar filling station, was offered by plaintiff. He stated, in effect, that he was inside the station building looking through the window and saw defendants' car start into the driveway, at which time he also saw plaintiff coming round the corner of the Auto Supply building; that plaintiff was about three or four feet south of the building and about

three feet east of the building line; that the car and plaintiff came in contact with each other when the car was about halfway past plaintiff; that plaintiff collided with the side of the car, at the front door, back of the fender; that the car was going at an angle, to the southwest, about fifteen miles per hour, and proceeded twelve or fourteen feet after the collision before coming to a stop; that when he first saw plaintiff he was carrying a white cane in one hand and a brief case in the other, and was walking forward looking at the sidewalk and towards the front; that plaintiff could not see very well.

The deposition of Mr. Stoeltzing, another filling station employee, was offered in evidence by plaintiff. He saw defendants' car come into the station and went out to service it. After it stopped he saw plaintiff lying on the sidewalk, about three feet from the west line thereof, with a white cane beside him. He testified that plaintiff stated that the wind was blowing and he had his head down and was holding his hat on.

Defendant Roessel testified to the effect that he traveled south on Grand Avenue at a rate of speed of fifteen miles per hour; that as he turned to go into the driveway, he slowed his car to a stop about from three to five feet east of the curb line, changed gears, and proceeded into and across the driveway at a speed of about six miles per hour, driving in a southwesterly direction; that when he slowed to a stop before entering the driveway he looked to the north and saw plaintiff standing, about a foot north of the south line of the Auto Supply Company building and about one and one-half feet east of said building, with his head turned to the west; that he then looked to the south and saw a man approaching on the sidewalk from that direction some twenty-five feet away; that he changed gears and proceeded straight ahead, southwesterly, and did not thereafter look toward or see plaintiff prior to the collision; that when the front end of the car was past the west line of the sidewalk and the rear end was about the center of the sidewalk he heard a clicking sound which, it developed, was caused by the collision with plaintiff; that he did not make an emergency stop but that he could have stopped, at the rate of speed he was traveling and under the conditions there existing, within three feet; that when he saw plaintiff he had a brief case in his hand but he saw no cane; that he saw a white cane beside plaintiff after the collision and that he knew that a white cane, when carried by a person, indicates that such person is blind.

The cause was submitted to the jury on the issue of humanitarian negligence, based on defendants' failure to warn plaintiff of his impending danger in time for plaintiff to have avoided the collision. Defendants' urge reversal on the sole ground that there was not sufficient evidence upon which to base said instruction.

In disposing of the question we must, subject to certain exceptions, accept as true all evidence which tends to support plaintiff's theory

of the case and his right to recover, and draw every reasonable inference therefrom favorable to him; and we must reject as untrue all evidence contradictory thereof. [Cento v. Security Building Company, 99 S. W. (2d) 1, l. c. 3.]

From the evidence most favorable to plaintiff the jury could have found that when defendant's automobile entered the driveway he saw plaintiff approaching the driveway from the north, steadily walking straight ahead with his eyes to the front, at a point six feet north of the point of collision; that Roessel drove his car without warning at a speed of fifteen miles per hour, from the left rear, diagonally across plaintiff's path; that Roessel knew that plaintiff suffered from impaired vision because he carried a white cane in his left hand, the side nearest defendant; that when he entered the driveway he knew that plaintiff was in impending and immediate peril, because plaintiff's appearance and conduct indicated that he was oblivious of the approach of the car, unless Roessel did something to avert the danger; and that Roessel had ample time to have sounded a warning but failed to do so. It is true that Roessel said that he did not see the cane but, since plaintiff carried it, the jury could have believed that defendant saw it. It is also true that Roessel stated that when he saw plaintiff he was standing, stationary, looking into a window; but the jury could have, and apparently did, disbelieve that part of his testimony. It could have believed the testimony of plaintiff to the effect that he did not stop and did not look into the window but walked steadily forward past the building and onto the driveway; and it could have believed Roessel's statement that he saw plaintiff, but it was not required to believe that plaintiff was where Roessel placed him at the time. Plaintiff's testimony on this point is strongly corroborated by Attebery who testified that he saw the car turn into the driveway and, at that time, plaintiff was walking southward on the walk some four feet south of the Auto Supply Company building.

Defendants correctly contend that the burden was on plaintiff to make proof of facts and circumstances tending to make a submissible case under the humanitarian doctrine. [Shepherd v. Chicago R. I. & P. Ry. Co., 335 Mo. 606, 72 S. W. (2d) 985, l. c. 988.] He did make such proof. In the above cited case there was no evidence of obliviousness. Proof of obliviousness and of Roessel's knowledge thereof was essential to plaintiff's right of recovery. Plaintiff carried a white cane which, Roessel said, would have indicated to him, if he had seen it, that plaintiff was blind. Roessel saw, or could have seen, if he had looked, that which was plainly visible; and it was his duty to look and to see. [Phillips v. Henson, 326 Mo. 282, 30 S. W. (2d) 1065, l. c. 1068.] Since he saw, or could have seen, a man with impaired vision (whom he would have considered to be blind) six feet north of the path of the car, walking directly and steadily forward toward the path of the automobile, there was evidence of plaintiff's

1240

obliviousness and of his immediate and impending danger. [Thomasson v. Henwood, 225 Mo. App. 1211, 146 S. W. (2d) 88, l. c. 91; Morhaus v. Hebeler, 104 S. W. (2d) 737, l. c. 739; Gray v. Columbia Terminals Company, 331 Mo. 73, 52 S. W. (2d) 809, l. c. 812; Poague v. Kurn, 346 Mo. 153, 140 S. W. (2d) 13, l. c. 19.]

However, defendants contend that they cannot be charged with knowledge that plaintiff's vision was more impaired than the evidence showed it to be. Conceding that such contention is correct, it cannot aid defendants in this case because there was substantial evidence tending to prove that plaintiff was, in fact, practically blind as to side vision when the accident occurred; that Roessel saw or could have seen such fact; and that the automobile approached swiftly and silently from plaintiff's left rear.

Plaintiff's testimony, relative to the condition of his vision, was to the effect that he had suffered from the disease of retinitis pigmentosis from the date of his birth; that it grew progressively worse as the years passed; and that, on the date of the trial, October, 1943, it had progressed to such a point that he had "gun barrel" vision, that is, could only see straight ahead. This part of his testimony was corroborated by substantial medical evidence. Plaintiff also stated that, on the date of the accident, his front vision was good, and that, at the time of the trial, his *vision* was much poorer than at the time of the accident. There was substantial evidence tending to prove that his forward vision was very poor at the time of the trial, much worse than at the time of the accident. The record on cross-examination of plaintiff on this point is, in part, as follows:

"Q. Now just a minute. We don't need to go into that, you just tell us about your vision. This particular defect in your vision, which you have described as retinitis pigmentosis, has been coming on since birth, is that right? A. Since birth.

"Q. All right, now I wish you would tell us how that affects you, what the defect is. A. It has grown to a point gradually over a period of years, being progressive, that I have the gun barrel vision, which is straight ahead. No side vision whatsoever. Gradually keeps closing in as time goes by.

"Q. And was that true on February 12, 1941, when you were injured at 18th and Grand Avenue? A. Slightly."

Plaintiff stated that he did not hear or see the automobile until it was directly in front of him. He said: "That is right, that is hte only place I could see him, right in front of me. . . . This car comes to my side *when I had no side vision.* . . . And I was on the sidewalk. Now then, that is the case."

When all of the evidence on the point is considered from the viewpoint most favorable to plaintiff's right of recovery, we hold that there was substantial evidence tending to prove that plaintiff had practically no side vision at the time of the accident; that he could

not see the automobile when it was to his left and to his left rear; and that he was oblivious of its approach. Defendant Roessel could have seen, from plaintiff's appearance and conduct, that plaintiff was oblivious of the impending danger.

It is contended that plaintiff was not in peril when Roessel saw him standing at the window of the Mid-Way Auto Supply Company. Such contention is true; but Roessel alone testified that plaintiff stopped and looked in at the window. His testimony in that regard is directly contradicted by that of plaintiff and, in effect, it is also challenged by the testimony of Attebery. While the jury could not accept as true the testimony of Roessel where same was directly contradictory of plaintiff's own testimony on that point, and use it to piece out a case for plaintiff. [McCoy v. Home Oil & Gas Company, 60 S. W. (2d) 715, l. c. 724.] The jury was the sole judge of the weight and credibility of the testimony and, in arriving at a verdict for plaintiff, it could have believed some parts of Roessel's testimony and disbelieved other parts. [McCormick v. Lowe & Campbell Company, 235 Mo. App. 612, 144 S. W. (2d) 866, l. c. 876.] Probably it disbelieved Roessel's testimony in this regard; nevertheless, there was sufficient evidence upon which to base the verdict. [March v. Pitcairn, 125 S. W. (2d) 972, l. c. 974.]

It is urged that "usually" a humanitarian negligence case must fail when plaintiff walks or drives into the side of a vehicle. [Lotta v. Kansas City Public Service Company, 342 Mo. 743, 117 S. W. (2d) 296, l. c. 302; Cavey v. St. Joseph Ry. Light, Heat & Power Company, 331 Mo. 882, 55 S. W. (2d) 438.] Of course, such a case must fail unless it is shown that plaintiff was in imminent and impending danger and oblivious thereof or unable to extricate himself, and that defendant saw and observed, or could have seen and observed, plaintiff's said danger and his obliviousness or inextricability in sufficient time to have stopped, swerved, slowed or warned. In this case there was sufficient evidence to support the verdict on this point. [Hornbuckle v. McCarty, 295 Mo. 162, l. c. 170, 171, 243 S. W. 327, l. c. 328, 329; Chastain v. Winton, 347 Mo. 1211, 152 S. W. (2d) 165, l. c. 168, 169.]

The judgment should be affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.